UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, S.I., a foreign insurer,

               Plaintiff,

      v.

COSMO INVESTMENTS, LLC, a limited liability
company; MELVYN SEGER, an individual,

               Defendants.

Case No. 3:22-CV-02006-YY

FINDINGS AND
RECOMMENDATIONS


YOU, Magistrate Judge.

## FINDINGS

This is an insurance coverage dispute in which plaintiff American Family Mutual

Insurance Company, S.I. ("American Family"), the insurer, seeks a declaratory judgment on the

limit of its obligation to indemnify defendants, the insureds, for claims relating to an apartment

fire. Compl., ECF 1. Underlying this case are three lawsuits in which tenants who were injured

by the fire assert that defendants were negligent in maintaining the apartment.[1] Defs. Mot.

---

[1] These Multnomah County Circuit Court cases are *Edmonds, et al. v. Cosmo Investments, LLC, et al.*, No. 21CV34484, and *Ross v. Cosmo Investments, LLC, et al.*, No. 23CV05689, which are pending, and *Murray, et al. v. Cosmo Investments, LLC, et al.*, No. 21CV43986, which has settled.

Summary J. 6, ECF 24; Mapes Decl., Ex. 1, ECF 25-1; Mapes Decl., Ex. 2, ECF 25-2.  Before

the court are the parties' motions for summary judgment on the applicable insurance limit.

American Family asserts that the $2 million policy limit applies, because the fire constitutes a

single "occurrence," as defined in the policy.  Pl. Mot. Summary J. 5, ECF 22.  Defendants, on

the other hand, contend that, at a minimum, the $4 million aggregate limit applies because the

claims in the underlying lawsuits involved multiple "occurrences."  Defs. Mot. Summary J. 4,

12, ECF 24.  Also, defendants argue that they are entitled to an additional $4 million under the

policy's provision for "personal and advertising injuries."  *Id.* at 15.  And defendants argue that

they are entitled to $4 million, or up to $8 million, in coverage because of ambiguity in the

policy's provision on the "Liability and Medical Expense limit."  *Id.* at 16.  For the reasons

stated below, American Family's motion should be GRANTED and defendants' motion should

be DENIED.

## I.    Legal Standards

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Only disputes over facts that are outcome determinative

preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  Furthermore, the dispute must be genuine, "such that a reasonable jury could return a

verdict for the nonmoving party."  *Id.*  At summary judgment, the court "does not weigh the

evidence or determine the truth of the matter, but only determines whether there is a genuine

issue for trial."  *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).  The evidence

of the nonmovant must be believed, and all rational and reasonable inferences are drawn in the

nonmoving party's favor.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

The interpretation of an insurance policy is a question of law.  *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649 (2006).  "The primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties."  *Totten v. New York Life Ins. Co.*, 298 Or. 765, 770 (1985) (*en banc*).  The court "determine[s] the intention of the parties based on the terms and conditions of the insurance policy."  *Holloway*, 341 Or. at 649–50.  The court interprets insurance policies according to what it perceives "to be the understanding of the ordinary purchaser of insurance."  *Botts v. Hartford Acc. & Indem. Co.*, 284 Or. 95, 100 (1978).

To ascertain the meaning of a policy provision, Oregon courts apply the methodology articulated in *Hoffman Construction Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464 (1992).  *See St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 192 (1996) ("*Hoffman* . . . delineat[es] the factors used by Oregon courts in determining the meaning of a provision in an insurance policy").  First, where the policy explicitly defines the term in question, the court applies that definition.  *Hoffman*, 313 Or. at 469; *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 307 (1999).  If the insurance policy does not define the term, the court determines whether the term has a plain, unambiguous meaning.  *Groshong*, 329 Or. at 308.  Where the term has only one plausible interpretation, the court applies that interpretation.  *Id.*; *Coelsch v. State Farm Fire & Cas. Co.*, 298 Or. App. 207, 211 (2019) ("If the term has a plain meaning, we will apply that meaning and our analysis is complete.").  If the term has multiple plausible meanings, the court examines the term in the particular context in which the term is used in the policy and in the broader context of the policy as a whole.  *N. Pac. Ins. Co. v.*

*Hamilton*, 332 Or. 20, 25 (2001) (citing *Hoffman*, 313 Or. at 470). If, after that examination, there remain two or more plausible interpretations, then the meaning of the term is construed against the policy drafter. *Id.*

## II.    Number of Occurrences

American Family argues that the fire constitutes the only "occurrence" and, thus, the single occurrence limit of $2 million applies. Pl. Mot. Summary J. 8, ECF 22. In reaching this conclusion, American Family cites to the policy's definition of "occurrence" as "an accident," and notes that, because the policy does not define "accident," the common understanding of the term applies. *Id.* at 5–6. American Family asserts that the ordinary purchaser of insurance would understand the term "accident," when applied to the facts of this case, to be referring to the apartment fire. *Id.* at 6. Because the sole "accident" is the fire, American Family contends, the $2 million single occurrence limit is implicated. *Id.* at 7. American Family further argues that neither the allegations in the underlying lawsuits that defendants committed multiple acts of negligence, nor the varied injuries associated with the fire, can be considered additional "accidents" or "occurrences." *Id.* at 8–10.

Defendants contend that, given the unique, personal, and independent nature of each person's injuries, it is reasonable to view each person's exposure to the fire as a separate "accident" or "occurrence." Defs. Mot. Summary J. 13–14, ECF 24. In support of this position, defendants assert that Oregon courts determine the number of "accidents" based on the resultant injuries. *Id.* at 12–13. In the alternative, defendants argue that each act of negligence asserted by the plaintiffs in the underlying lawsuits constitutes a separate occurrence. Defs. Resp. 9, ECF 28. In reaching this conclusion, defendants draw on caselaw stating that an "accident" must have

a "tortious connotation." *Id.* at 7–8 (citing *Oak Crest Const. Co. v. Austin Mut. Ins. Co.*, 329 Or. 620 (2000)).

The first step in analyzing the meaning of "occurrence" is to consult the definitions section of the policy. *Hoffman*, 313 Or. at 469. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Kim Decl., Ex. 1 at 12, ECF 23-1.

Because the policy does not define "accident," the court determines whether that term has a common meaning. There is an unmistakable, clear import to the word "accident"—"accident" refers to an unintended incident or event. *See St. Paul Fire & Marine Ins.*, 324 Or. at 204 (citing Webster's Third New Int'l Dictionary 11 (unabridged ed 1993)).[2] Here, an ordinary purchaser of insurance, when examining the facts of this case, would view the only accident as the fire itself. Contrary to defendants' contention, a layperson would not understand "accident" to refer to each individual's exposure to the fire or each negligent act contributing to the fire. Stated another way, a layperson would not characterize the fire as causing or being caused by multiple "accidents."

---

[2] The Oregon Supreme Court has observed that "[t]he word 'accident' commonly means, as pertinent":

> "1a: an event or condition occurring by chance or arising from unknown or remote causes * * * b: lack of intention * * * 2a: a * * * sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result * * * c: an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but from the consequences of which he may be entitled to some legal relief."

*St. Paul Fire & Marine Ins.*, 324 Or. at 204.

Applying the common usage of the term, all of the injuries asserted in the underlying cases were caused by one single, uninterrupted accident—the apartment fire.  In fact, where courts have examined the issue of the number of occurrences arising out of a fire, they have consistently held that a single fire constitutes a single accident.  *See, e.g.*, *Barrett v. Iowa Nat. Mut. Ins. Co.*, 264 F.2d 224, 225 (9th Cir. 1959) (holding that a building fire "constituted a single accident"); *Lexington Ins. Co. v. Travelers Indem. Co. of Illinois*, 21 F. App'x 585, 590 (9th Cir. 2001) ("We agree with the district court that four separate fires in four separate buildings at four separate locations constitute four separate occurrences for purposes of plaintiffs' liability and the policy deductible."); *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 204, 207 (5th Cir. 1971) (collecting cases).  There is no other reasonable interpretation of that term; thus, the court need not proceed further to the next steps in the analysis.  The apartment fire constitutes a singular "occurrence"; therefore, the single occurrence limit of $2 million applies.

The cases that defendants cite in support of their position are not persuasive.  In short, those cases are so factually distinguishable from the instant case that they provide no helpful analysis.  None of the cases discusses a situation where a court determined that a single, finite event, such as a fire, constituted multiple "occurrences."  Instead, as discussed further below, the cases cited by defendants address the distinction between intentional and accidental actions or involve prolonged exposure (e.g., the exposure to lead paint over many months) or multiple exposures (e.g., numerous instances of sexual assault over several years).

Defendants first cite *North Clackamas School Dist. No. 12 v. Oregon School Brds. Assoc. Prop. & Cas. Trust*, 164 Or. App. 339, 345 (1999), for the assertion that the number of "accidents" is contingent "not on conduct, but on result."  Defs. Mot. Summary J. 12, ECF 24.  Critically, this case analyzes the term "accident" in the context of whether an action was

intentional or accidental. *See North Clackamas*, 164 Or. App. at 345 ("[T]he question is not whether the conduct that caused the injury was intentional but whether the insured specifically intended to cause the injury that gives rise to coverage.") (quoting *Minnis v. Oregon Mutual Ins. Co.*, 162 Or. App. 198, 210 (1999)). The court determined that a school district had not acted with the intent to harm when it negligently hired a teacher who sexually abused a student. *Id.* Thus, the court concluded, the student's claims "were the result of an 'accident' and, hence, his claims were within the policy's 'occurrence' coverage." *Id.* That case is patently different from the instant case, given the intention of defendants is not at issue here. The analysis, therefore, is not instructive in determining the number of "accidents."

Next, defendants quote *TIG Ins. Co. v. Travelers Ins. Co.*, No. CV-00-1780-ST, 2003 WL 24051560, at *3 (D. Or. Mar. 24, 2003), for the proposition that "[a]n 'occurrence' for purposes of insurance coverage is any injury caused by an accident." Defs. Mot. Summary J. 13, ECF 24. Like *North Clackamas School District*, this case analyzes "accident" in the context of the distinction between accidental and intentional actions. The full statement, from which defendants excerpted this language, reads: "An 'occurrence' for purposes of insurance coverage is any injury caused by an accident, which exists unless the insured *subjectively intended* to cause the injuries in question." *TIG Ins.*, 2003 WL 24051560, at *3 (emphasis added). Thus, this case, as well, is not instructive in determining the number of "accidents" that arose from the fire.

Defendants cite to *Interstate Fire & Cas. Co. v. Archdiocese of Portland in Oregon*, 35 F.3d 1325 (9th Cir. 1994), in support of the assertion that "each plaintiff's accidental injury resulting from each plaintiff's exposure to harmful conditions" constitutes a separate occurrence. Defs. Mot. Summary J. 13, ECF 24. In *Interstate Fire*, the court examined the number of

occurrences arising out of the repeated sexual molestation of an individual throughout four policy periods. 35 F.3d at 1327. Focusing on policy language that expressly limited coverage to damages that occurred in the period provided by the policy, the Ninth Circuit held that the individual's exposure to molestation in each of the policy periods constituted a separate occurrence. *Id.* at 1331 ("In sum, because each policy covers only damages stemming from Grgich's exposure to Father Laughlin occurring during the policy period, and because the parties do not contest that Grgich was exposed to the negligently supervised priest in each of the four policy periods, we conclude that Grgich's claim implicates four occurrences.").

The holding in *Interstate Fire* is premised upon specific policy language restricting coverage to injuries that incurred within each policy period. Defendants do not assert that such language is present in this case. Moreover, the plaintiff in *Interstate Fire* experienced injuries spanning multiple policy periods. Those circumstances are not present here, where all asserted injuries resulted from a single fire. *Interstate Fire* does not, therefore, offer instructive precedent.

Defendants also point to a Multnomah County Circuit Court case, *Pelaez v. Farmers Insurance Exchange*, No. 15CV30062, Order Regarding Summary Judgment Motions (Apr. 11, 2017), in which the court determined that, "under the language of the policies," each child's exposure to lead paint constituted a separate occurrence. Defs. Mot. Summary J. 14, ECF 24; Mapes Decl., Ex. 4 at 2, ECF 25-4. As American Family points out, this decision does not provide the operative policy language. Pl. Resp. 9, ECF 27. Because the policy language is not provided, the applicability of that ruling to this case is indeterminable. Moreover, *Pelaez* is distinguishable because it concerned long-term exposure over multiple policy periods. Mapes Decl., Ex. 4 at 2, ECF 25-4 (indicating that the "exposure to lead paint caused lead poisoning

beginning in November 1994 and that exposure (at least) continued into 1995"). Thus, *Pelaez*, likewise, is not helpful in determining the number of "accidents" or "occurrences" as those terms pertain to a fire.

Lastly, defendants rely upon *Oak Crest Const. Co. v. Austin Mut. Ins. Co.*, 329 Or. 620, 627 (2000), for the assertion that the number of "accidents" is determined by the theories of negligence asserted against the defendants in the underlying lawsuits. Defs. Resp. 8–9, ECF 28. Defendants also argue that *Oak Crest* requires that the term "'accident' has a tortious connotation," and, therefore, the fire cannot be characterized as an "occurrence" because it "would not give rise to tort liability." *Id.* at 8, 10 (citing *Oak Crest*, 329 Or. at 627). In *Oak Crest*, the court clarified the meaning of "accident" as used in a commercial liability policy, in the context of a subcontractor's deficient painting work. 329 Or. at 628. The court offered two examples of situations that might qualify as covered "accidents": where the subcontractor breached a duty to act with due care—in other words, negligent performance—or where the contractor might be liable to another party for damages arising from the deficient performance. *Id.* at 629. *Oak Crest* did not establish that each, alternate theory of liability asserted in an underlying action is a separate "accident." And, contrary to defendants' assertion, *Oak Crest* affirms that the fire qualifies as an "accident" because defendants may be liable in tort for negligent maintenance of the apartment building.

In sum, none of the cases that defendants cite compel a departure from the conclusion that "accident" is defined as an unintentional incident or event. Applying that definition, the facts of this case present a single "accident" or "occurrence"—the apartment fire. Accordingly, the policy limit of $2 million, for a single occurrence, applies.

III.    **"Personal and Advertising Injury"**

Defendants seek an additional $4 million in coverage pursuant to the "personal and advertising injury" provision of the policy, which covers injuries arising out of "false arrest, detention, or imprisonment."  Defs. Mot. Summary J. 15, ECF 24.  Defendants assert that the appropriate inquiry for determining the scope of coverage is whether the alleged facts "could potentially support legal liability" for a covered injury.  Defs. Reply 9, ECF 32.  Defendants argue that the allegations in the underlying lawsuits show that the fire detained or imprisoned three individuals in the apartment building and, thus, insurance coverage should be available under the "personal and advertising injury" provision.  *Id.*

American Family argues that the underlying lawsuits do not allege claims for, or injuries caused by, false detention or false imprisonment.  Pl. Resp. 12, ECF 27.  American Family asserts that, even applying a literal definition of "detained" or "imprisoned," the underlying lawsuits do not contain allegations of unlawful confinement.  *Id.*  at 13.  Thus, American Family contends, the "personal and advertising injury" coverage is not triggered, and no separate coverage limit applies.  *Id.*

Coverage is triggered "where the complaint against an insured states a cause of action which may lie" within the terms of the policy.  *Blohm v. Glens Falls Ins. Co.*, 231 Or. 410, 415 (1962); *see also Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91 (2001) ("An insurer has a duty to defend if the factual allegations of the complaint, without amendment, state a claim for any offense covered by the policy.").  The complaint must contain factual allegations that satisfy the elements of the offense.  *L & D of Oregon, Inc. v. Am. States Ins. Co.*, 171 Or. App. 17, 21 (2000) ("Crespi's claims are not covered under the terms of the policy unless the conduct alleged satisfies the legal elements for those torts.").

The policy provides coverage for "personal and advertising injury," which is defined, in relevant part, as an injury "arising out of one or more of the following offenses: [f]alse arrest, detention or imprisonment[.]"  Kim Decl., Ex. 1, at 12, ECF 23-1.  To establish coverage for "detention" or "imprisonment," defendants were required to show that the allegations in the underlying complaints satisfy the elements of those offenses.  Defendants fall woefully short.  Defendants vaguely assert that "the facts alleged could potentially support legal liability based on covered 'personal and advertising injury,'" but they fail to identify any specific allegations that establish the offenses of false imprisonment or detention.  Defs. Reply 9, ECF 32.

Indeed, there are no allegations in the underlying complaints that could reasonably be interpreted to demonstrate that defendants imprisoned or detained of any individuals during the apartment fire.  The complaints in the underlying lawsuits allege that defendants were negligent in "moving the subject dumpster into a carport underneath occupied apartment units," "failing to provide fire escapes to the tenants of the[ir] apartment complex," "failing to have sprinklers or any fire suppression system to protect their tenants in the case of a fire," "using a flammable plastic dumpster in the area directly underneath occupied apartment units and adjacent to wooden catwalks and stairways that were the only means of escape for tenants of the apartment complex," and "failing to adequately warn and instruct their tenants about the risk of fire and what to do and how to escape in the case of a fire.").  Mapes Decl., Ex. 1, ¶ 15, ECF 25-1; Mapes Decl., Ex. 2, ECF 25-2; Compl., Ex. 2, ECF 1-2.  None of these allegations supports the offense of false imprisonment or detention.  Accordingly, defendants are not covered under the policy's "personal and advertising injury" provision.

//

//

**IV.    "Liability and Medical Expenses Limit"**

Lastly, defendants argue that there is ambiguity in the meaning of the policy's "Liability and Medical Expenses Limits of Insurance" provision.  Defs. Mot. Summary J. 16, ECF 24; Defs. Reply 11, ECF 32.  This provision states in pertinent part:

> 1.  The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>    a.  Insureds;
>    b.  Claims made or "suits" brought; or
>    c.  Persons or organizations making claims of bringing "suits".
> 2.  The most we will pay for the sum of all damages because of all:
>    a.  "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and
>    b.  "Personal and advertising injury" sustained by any one person or organization;
> is the Liability and Medical Expenses limit show in the Declarations.  But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit show in the Declarations.

Kim Decl., Ex. 1 at 10, ECF 23-1.  The relevant declarations page is captioned "Section II Liability and Medical Expenses," and provides a "limit of insurance" of $2 million for "liability - each occurrence limit" and $4 million for "aggregate limit."  *Id.*, Ex. 1 at 1 (capitalization omitted).

Defendants argue that, while the provision states "[t]he most we will pay for the sum of all damages . . . is the Liability and Medical Expenses limit shown in the Declarations" page, the declarations page does not "identify a specific limit by that title."  Defs. Mot. Summary J. 16, ECF 24.  Defendants contend that the "[d]eclarations instead list multiple limits under the general heading 'Section II Liability and Medical Expenses.'"  Defs. Mot. Summary J. 16, ECF 25; *see* Kim Decl., Ex. 1 at 1, ECF 23-1 (capitalization omitted).  Defendants assert that an ordinary purchaser of insurance would not be able to understand what the "Liability and Medical

Expenses limit" is referencing, and to resolve that ambiguity, the insured is entitled to the "highest limit shown in the Declarations under the heading 'Liability and Medical Expenses,'" which is the $4 million aggregate limit. *Id.*

But as American Family contends, there is only one plausible interpretation of "Liability and Medical Expenses limit," when viewed in the context in which it is used in the policy and in light of the policy as a whole. "Liability and Medical Expenses limit" refers to the applicable limit under "Section II Liability and Medical Expenses," which is determined by the nature of the claim asserted by the insured. As it pertains to the facts of this case, because the apartment fire constitutes a single "occurrence," the applicable "Liability and Medical Expenses limit" is the $2 million "each occurrence limit." Defendants take the position that the "Liability and Medical Expenses limit" should be understood, in all circumstances, to refer to the "aggregate limit." Defs. Mot. Summary J. 16, ECF 24. But applying defendants' interpretation would lead to the incongruous result that the "aggregate limit" applies to claims that assert a single "occurrence." *See Leach v. Scottsdale Indemn. Co.*, 261 Or. App. 234, 242 (2014) ("[A] proposed interpretation [that] would require [this court] to disregard any provision of the policy . . . is not reasonable, as a matter of law.")).

## RECOMMENDATIONS

Plaintiff American Family's motion for summary judgment, ECF 22, should be GRANTED, and defendants' motion for summary judgment, ECF 24, should be DENIED.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Tuesday, August 20, 2024. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED August 6, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge